## Clark et al. v. Taylor.

Dec. 19, 1941.

As Modified on Denial of Rehearing Feb. 13, 1942.

Stephens & Steely for appellant.

B. J. Bethurum and J. C. Bird for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This equity action was filed in the McCreary circuit court by appellee and plaintiff below, Anna Taylor, against her brother, George Clark, an appellant and a defendant below, and joined with him are the heirs of their deceased brother, Walter Clark, and some of the latter's vendees who had purchased a part of the mortgaged real estate herein involved. Plaintiff sought a personal judgment against defendant, George Clark, for the sum of $800 with interest, and the enforcement of a mortgage lien given to her to secure her debt on a tract of land in McCreary county containing about 150 acres. The other defendants and appellants are the heirs of Walter Clark, who died before the filing of this action, and others to whom a part of the mortgaged land had been sold since the mortgage was given. The defense to the action was that George Clark never borrowed any amount from the plaintiff, his sister, nor did he execute a note to her to secure any loan, nor did he attempt to secure it with the alleged mortgage held by plaintiff, although it was duly acknowledged by him before the county court clerk and put to record many years before the filing of the action and immediately after the alleged borrowing transaction was completed.

Another defense was that the mortgage had been released on the margin of its record in the county court clerk's office by Lola King, who at that time was a deputy county court clerk serving under one Stevens, the regular county court clerk, but at the time of testifying in this case she had been elected and was serving as regular county court clerk. The alleged release of the mortgage was under purported authority given to her by a power of attorney which purported to be signed and acknowledged by plaintiff, Anna Taylor, in which she created Lola King her attorney in fact to execute the release. In response thereto plaintiff pleaded that the alleged power of attorney under which the release was

made was never executed by her and that she knew nothing about it, nor had she ever heard of it, until about the time of filing this action to collect her debt, and that, "Said power of attorney was a fraud and a forgery." Following pleadings made the issues and the court, after preparation and submission, sustained the prayer of the petition and rendered personal judgment against George Clark, and enforced plaintiff's mortgage by ordering the incumbered land sold by the court's master commissioner, with proper directions for the disposition of the proceeds of sale after payment of plaintiff's indebtedness and the costs of the action. To reverse that judgment defendants prosecute this appeal.

It will thus be seen that the only issues involved are factual ones, which are (1) whether or not the defendant, George Clark, created the indebtedness sued on and executed the contested mortgage to secure it? and if he did do so then (2) was that mortgage and the indebtedness secured by it later released under a genuine power of attorney executed by plaintiff for that purpose. To the determination of those questions we will now address ourselves.

1. The background of the alleged borrowing of the amount sued on is, that about the year 1926 Walter Clark, an energetic and more or less prosperous farmer of McCreary County, killed the son of one of his tenants, for which he was convicted and sent to the penitentiary for twenty-one years. Before his conviction became final, and before he was transported to the penitentiary, he conveyed a large acreage of land owned by him to his brother, the defendant, George Clark, who personally owned but little property of any character, and who had been assisting his brother, Walter, in the management of the latter's affairs, which in turn consisted of farming parts of his land, and operating a number of saw mills in the conversion of timber on his various tracts of land into lumber. The alleged purposes of that conveyance was two-fold; one to enable George Clark to manage his brother's affairs freely and without the necessity of having to call on him while confined in a distant prison for the completion of any necessary transaction, and the other was to save the brother's land from subjection to the payment of any judgment which the administrator of the person he had killed might recover against him because of that homicide.

Walter Clark remained in the penitentiary for some years when he was released, either by parole or pardon (but which one the record does not disclose), and returned to his home, but his wife had left him and obtained a divorce in the meantime, after which she removed to New York. Following his release from imprisonment his brother, George, reconveyed the property to him, but which was after he had executed to plaintiff the mortgage sought to be enforced by this action. Plaintiff testified positively that her brother George stated to her when he first applied for the $800 loan that he was borrowing the money for the benefit of their imprisoned brother, to be used largely, if not entirely, in an effort to obtain his release from imprisonment, and that she, through sympathy for their imprisoned brother, was induced to make the loan, although it was at a sacrifice. She testified that her brother executed to her a note for that amount and secured it by the execution of the disputed mortgage which he duly acknowledged and it was put to record by her. She testified that she kept the note and the mortgage in a small leather bag fastened by a zipper, which she carried with her when making trips from home and on one occasion she lost it and was unable to find it. Therefore, the original note, as well as the mortgage given to secure it, was not produced at the trial. However, their due execution was corroborated by a sister to each of the parties to the transaction who was present when the lost documents were executed and who corroborated in every particular the testimony of plaintiff. Her testimony was delivered in a manner indicating sincerity and creating belief in its truth.

Furthermore, remarks (sometimes amounting to quasi admissions) by George Clark prior to the institution of this action, were also proven by still other witnesses. However, the deputy county court clerk, who signed the certificate of acknowledgment to the mortgage in the name of his principal, testified that he did not do so, or at least that he did not remember having done so. Some seven or eight years had elapsed and that fact, coupled with the more or less advanced age of the deputy, might account for his failure of memory. Moreover, he was shown to have been a fast and long-standing friend of both Walter and George Clark and had worked for the former more or less continuously for many years in the prosecution of the saw milling business and other transactions of Walter, both before he was convicted and

imprisoned, as well as after his release. The deputy was likewise well acquainted with, as well as on intimate terms with, George Clark. In addition thereto plaintiff attacked his reputation for truth and veracity which was impeached by a number of witnesses testifying in the case, while it was sustained by none. The court found, therefore, that the indebtedness sued on, and the security given therefor, were each bona fide and genuine transactions, and which we have no trouble in confirming.

2. On the issue of the release of the mortgage and the debt it secured as entered on the margin of the county court clerk's record, plaintiff testified that she never executed any such alleged power of attorney and never heard of it until about the time of the filing of this action. She proved by another sister that on the date shown on the alleged power of attorney witness was visiting her brother Walter in his home after his release from prison, and while there her brother George and the county court clerk of the county came to Walter's home with the power of attorney, and that her brother Walter requested her to sign plaintiff's name thereto and to acknowledge it. Also, he represented to her that no debt had ever been actually created, nor any bona fide incumbrance placed upon the land by the mortgage. It was also represented to her that the request made of her was for the benefit of, perhaps, both brothers. Acting under such representations, and being unfamiliar with such matters, witness testified that she signed the name of her sister (plaintiff) to that power of attorney and consented to acknowledge it in the name of her sister, the plaintiff, before the county court clerk, who, presumably, was under the impression that the signer of the document was in reality Mrs. Taylor. The witness returned to her home in Pike county and heard no more about the matter until this controversy arose, when she informed her sister, the plaintiff, of what she had done several years before.

The county court clerk who took the acknowledgment to the power of attorney died before the filing of this action and the original of all of the documents here involved, i. e., the note, the mortgage and the power of attorney, were each and all lost; so that, no witness testified as to the handwriting of any signature made in connection with their execution. However, the testimony in

the case, as we interpret it, fully sustains the finding of the chancellor that the debt and the mortgage given to secure it were each bona fide and duly created and executed by George Clark, and also that the power of attorney under which the release was made was a forgery and, therefore, of no effect.

But it is argued that some of the depositions for plaintiff by which material facts were developed were taken in rebuttal when the facts testified to were in chief, and that defendants' motion to quash them should have been sustained. However, that contention is not borne out by the facts and, perhaps, it was prompted by briefing counsel (who did not participate in the trial) becoming confused by the manner in which the clerk who prepared this record failing to copy the depositions in the chronological order in which they were taken. The certifications of the examiners show that the proof was taken in orderly fashion.

It is, furthermore, argued that plaintiff's pleading was not sufficient (under Section 3760 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes) to sustain her attack on the certificate by the deputy county court clerk to the alleged power of attorney by which her debt and the mortgage to secure it were released of record. That section disallows the calling in question of any officially certified facts, except in a direct proceeding against the officer or his surety, or for "fraud in the party benefited thereby, or mistake on the part of the officer." We have above recited the allegation of plaintiff's pleading on that issue. Besides denying the execution of the power of attorney in her pleading and in her testimony, she averred that it was a forgery and a fraud. Blackstone in the 4th Volume of his commentaries, Star page 247, defines forgery as "The fraud in making or alteration of a writing to the prejudice of another man's rights." See 23 Am. Jur. 676, Section 2, wherein other definitions appear. If plaintiff's proof as given by herself and her sister is true, then the alleged power of attorney was bogus and its execution was a forgery, and both of her brothers, Walter and George, who procured it to be done in that way, themselves practiced the fraud and each of them was benefited thereby, the one by having released the incumbrance on his land that the other one had reconveyed to him, and the other one by being released from the payment of the debt. Likewise, since it

was not shown that the county court clerk who took the acknowledgment to that power of attorney knew plaintiff or her sister who impersonated her, it does not require a violent presumption that he himself was mistaken in certifying that plaintiff had in person executed that document. Therefore, both the pleading and the evidence sustain the judgment of the chancellor on this factual issue also.

Wherefore, for the reasons stated, the judgment is affirmed.